MARY FOX and others *vs.* EDWARD BURKE.

December 20, 1883.

**Evidence—Presumption of Legitimacy.**—Upon the principle that innocence and right conduct are presumed, in the absence of proof of guilt and wrong conduct, and on account of the reluctance of the law to bastardize, the presumption in favor of legitimate birth is exceedingly strong. New trial granted in this case, upon the ground that a question of legitimacy should have been left to the jury.

Ejectment. Plaintiffs, who are a sister, and the children of a deceased sister and of a deceased brother, of John Fitzgerald, deceased, claim title as the heirs-at-law of John Fitzgerald. Defendant claims title under a deed from one Charles Fitzgerald as the only son and heir-at-law of John Fitzgerald.

The action was brought in the district court for Meeker county, and was tried before *Lochren, J.*, (acting for the judge of the 12th district,) and a jury. On the trial plaintiffs introduced in evidence depositions of plaintiffs and other persons residing in New York, from which it appeared that John Fitzgerald was born in Ireland and was married twice in England. That he had only two children by his first wife, both of whom died in infancy, and that he had no children by his second wife, who lived with him, and survived him about a month. Bridget Fitzgerald, widow of the deceased brother of John Fitzgerald, testified that John Fitzgerald had an illegitimate son called Thomas, who went to Australia. It also appeared that John Fitzgerald had resided on the land in question from some time prior to 1856 till the time of his death in 1873, and that none of the plaintiffs had seen him during the last eighteen years of his life.

The testimony on behalf of the defendant tended to show that Charles Fitzgerald came to Minnesota from England about the year 1870, and in response to letters from John Fitzgerald asking him to come; that prior to his coming, John Fitzgerald spoke to his neighbors and friends of his son Charley in England, who was coming to live with him, and, after his arrival, acknowledged and introduced him among his neighbors as his son. It also appeared that, in 1875, Charles Fitzgerald, after conveying the land to defendant, had left the country and that his whereabouts are unknown. Other facts appearing from the evidence are stated in the opinion. When the evidence closed, a verdict was directed and returned for the plaintiffs. The defendant appeals from an order refusing a new trial. The decision of a former appeal in this case will be found in 29 Minn. 171.

*E. A. Campbell*, for appellant.

*P. M. Babcock*, for respondents.

BERRY, J. As there are no facts tending to show, and, so far as we discover, there is no claim made, that, though illegitimate born, Charles Fitzgerald was legitimated by the subsequent marriage of his parents, the real question on trial before the court below was whether Charles Fitzgerald was the legitimate son of John Fitzgerald and his first wife, in the sense of having been born in lawful wedlock. In favor of an affirmative answer to this question there was—*First*, the testimony of two witnesses, swearing that John Fitzgerald told them that Charles was his son by his first wife. This, in common parlance, would be understood to mean that Charles was his son by his first wife *as wife*, or, in other words, that he was their legitimate son. Such would also be its *prima facie* meaning in law. *Wilkinson* v. *Adam*, 1 Ves. & B. 422; *Caujolle* v. *Ferrie*, 23 N. Y. 90. There was also the testimony of several other witnesses that John Fitzgerald for many years recognized and treated Charles as his son, as did also his second wife. *Second*, the evidence being very cogent that Charles was the son of John Fitzgerald, there is the presumption that he was his legitimate son; and there being evidence (from the declaration of John Fitzgerald) that he was the son of him (John) and of the woman who was his first wife, there is the further presumption that he was born in lawful wedlock. And these presumptions

are not slight, as the learned judge below told the jury, but exceedingly strong. *Caujolle* v. *Ferrie, supra,* and cases cited; *State* v. *Worthingham,* 23 Minn. 528. They rest upon the principle that innocence and right conduct are presumed, in the absence of *proof* of guilt and wrong conduct, and upon the reluctance of the law to bastardize. Opposed to the testimony and presumptions mentioned is the testimony of plaintiff's witnesses, denying that Charles was a son of John Fitzgerald, legitimate or illegitimate; for a more particular account of which we refer to the opinion filed upon the former appeal in this case. *Fox* v. *Burke,* 29 Minn. 171. In our judgment the testimony and the presumptions in favor of the legitimacy have a reasonable tendency to sustain it, and the testimony to the contrary is not so conclusive as to authorize a trial judge to take the question of legitimacy from the jury by directing them to find a verdict for plaintiffs. As for the comparative weight of the testimony on one side and the other, we express no opinion further than to say that the testimony on behalf of the plaintiffs was not so overwhelming or preponderant as to enable a court to say, as a matter of law, that it completely overcame the testimony for the defendant. In view of a probable new trial, this is all that it is advisable for us to say with reference to the testimony, except to remark that the testimony upon defendant's side upon the second trial is somewhat stronger than it was upon the first.

Order reversed.

GILFILLAN, C. J., dissents.